ELECTRONICALLY FILED
Washington County Circuit Court
Kyle Sylvester, Circuit Clerk
2019-Jun-20 11:28:21
72CR-09-1230A
C04D06 : 2 Pages

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
## SIXTH DIVISION

STATE OF ARKANSAS                                        PLAINTIFF/RESPONDENT

VS                          Case No. 72 2009-1230-6

RICKY RAY ANDERSON                                       DEFENDANT/PETITIONER

### ORDER

Now on this 20th day of June, 2019, comes on for hearing Defendant's Motion for the Performance of D.N.A Testing Pursuant to A.C.A. 16-112-201 et. seq. - Scientific Evidence filed on the 19th day of June, 2019, and from the case file, record of the entire case, and other things and matters before the Court, the Court finds as follows:

1. That Defendant's Motion, for the most part, makes arguments which were set forth in his Motion for Post-Conviction Forensic Testing filed on September 16, 2016, denied by this Court on November 17, 2016, and the Motion for Reconsideration filed June 16, 2017, denied by this Court on July 24, 2017.

2. That Defendant argues his clothing and a knife, should have been tested in the new Motion.

3. That the identity of the perpetrator was not an issue during the prosecution of the Defendant, and the Defendant has failed to identify a theory of defense that would establish his actual innocence. The testing requested by the Defendant would not produce new material evidence to support a defense of actual innocence or raise a reasonable probability that the Defendant did not commit the offense.

4. That the Motion is not filed in a timely fashion and the Defendant has not rebutted that presumption.

5. That DNA testing was available at the time the Defendant was convicted.

6. That this Court has previously rejected the argument that his counsel was ineffective for not requesting that this evidence (knife and clothing) be tested.

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED, that Defendant's Motion for the Performance of D.N.A Testing Pursuant to A.C.A. 16-112-201 et. seq. - Scientific Evidence should be, and it hereby is denied.

IT IS SO ORDERED.

MARK LINDSAY
CIRCUIT JUDGE

copy to:
Matt Durrett

Copy via U.S. Mail to:
Ricky Ray Anderson   ADC# 148467
Arkansas Department of Correction
2501 State Farm Road
Tucker, AR   72168

2

In The Circuit Court Of Washington County, Arkansas
6th Division

State of Arkansas                    Plaintiff / Respondent

          vs.          Case No. 72CR2009-1230-6

Ricky Ray Anderson                    Defendant / Petitioner

_____

## Notice Of Appeal And
## Designation Of Record

    Comes now the Defendant / Petitioner, Ricky Ray Anderson, who was declared indigent by this Court and prays an appeal to the Arkansas Supreme Court from the Order denying scientific testing on clothing and a knife recovered at the scene entered on June 20, 2019, Defendant/Petitioner specifically requests that the entire record in this case be produced and designates that

1

record as his record of appeal in this case.
It is the duty of the court reporter to make
"a complete record of the proceeding."
(A.C.A. 16-13-510(a))(Repl. 2010) The record
consists of "all proceedings...... pertaining to any
contested matter before the court or the jury."
(Ark. Sup. Ct. Admin. R. 4(a)) At the request of
either party "said record shall be transcribed
[and] certified by the reporter as true and
correct." (A.C.A. 16-13-510(a))

In addition to the above, Defendant/Petitioner
designates the most recent Petition For The
Performance Of DNA Testing Pursuant To A.C.A.
16-112-201 et. seq. - Scientific Evidence as part of
the record on appeal.

Respectfully submitted,

Ricky Ray Anderson #148467
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168

2

## Certificate of Service

I certify that I have served a copy of the foregoing to Matt Durrett, Prosecuting Attorney, by placing same in the Maximum Security Unit institutional mail system with sufficient postage this ___11th___ day of ___July___, 2019.

_Ricky Anderson_
Ricky Ray Anderson #148467

3



**State of Arkansas**
**Washington County**
**Washington County Courthouse**
**280 N. College Ave., Ste. 302**
**Fayetteville, AR 72701**
**Kyle Sylvester**
**Circuit Clerk**

# <u>Notice of Incomplete Filing</u>

**Per Circuit Court Judge Mark Lindsay and his interpretation of case law**
**Penn V Gallagher Et Al CV16-387 of the Supreme Court of Arkansas,**
**all filings must have the following items before the Judge will consider them.**
**Failure to comply could result in your filings not making it into your court case.**

**Date:** 7-17-19

We regret to inform you that your lawsuit cannot be filed due to missing necessary
documents. Please see below.

☑ Cover Sheet

☐ Complaint/Petition

☑ Petition To Proceed In Forma Pauperis

☑ Affidavit In Support Of Petition To Proceed In Forma Pauperis

☑ Order To Proceed In Forma Pauperis

☑ Calculation of Initial Payment of Filing Fee Form
   *(Must be signed by the Department of Corrections)*

Please remit with the documents marked above to the following address.

**Washington County Circuit Clerk's Office**
**280 N. College Ave., Ste. 302**
**Fayetteville, AR 72701**

Respectfully Submitted,

**Circuit Clerk**        **Deputy Clerk**

**WashCo#2019**

Ricky Anderson #148467
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168

Date July 22, 2019

Kyle Sylvester
Washington County Circuit Clerk
280 N. College Suite 302
Fayetteville, AR 72701

Dear Sir;

By cover of this letter please
indicate below my desire to address with
you a matter concerning State of Arkansas
vs. Ricky Ray Anderson, Case No. 72 CR 2009-
1230-6 in Sixth Division

On July 11, 2019 I attempted to file in
this office a Notice of Appeal from the court's
June 20, 2019 order denying my Motion For The
Performance of DNA Testing. The NoA was Timely
on July 19, 2019 I received a Notice of Incomplet
filing dated July 17, from this office that
Stated that I needed to supply you items
before you would lodge The notice, including
an informa pauperis petition. The documents

2 of 2

you refer to apply to a new civil action, not an NoA. I refer you to Rule 3(b) 4(e) of the Arkansas Rules of Appellate Procedure - Civil for information and the proper format for the preparation and filing of a Notice of Appeal. My NoA substantially complies with these Rules and should have been processed by you. Rule 5(a) of the Arkansas Rules of Appellate Procedure-Civil requires that you transmit the record to me and file the record with the clerk of the Arkansas Supreme court within 90 days from the filing of the first notice of appeal unless extended, and Rule 7 of those same Rules require that you certify the record.

I'm asking that you process my NoA, which is now belated due to these developments. I'm resubmitting it under cover of this letter.

Any help that you can offer in these regards is greatly appreciated.

I do remain

Ricky Anderson

Ricky Anderson

#148466

CC: File

Arkansas Supreme Court Clerk



STATE OF ARKANSAS
WASHINGTON COUNTY
WASHINGTON COUNTY COURTHOUSE
280 NORTH COLLEGE, SUITE 302
FAYETTEVILLE, AR 72701
KYLE SYLVESTER
CIRCUIT CLERK

Dear Mr. Anderson,

The Circuit Clerk's office is in receipt of your letter.  This is not a pleading in which the court can take action.  You are advised to consult your counsel with any further questions regarding this matter.

Deputy Circuit Clerk
Washington County Circuit Clerk

# IN THE CIRCUIT COURT OF WASHINGTON COUNTY ARKANSAS
## 6th DIVIVSION

**Ricky Ray Anderson**                                    **Petitioner**

**vs.**                        **Case No. 72 CR-09-1230-6**

**State of Arkansas**                                    **Respondent**

_____

## Motion For the Performance of D.N.A. Testing Pursuant to A.C.A. 16-112-201 et. seq. -Scientific Evidence

Comes now the petitioner and for his Motion states the following;

## I. Procedural History

Petitioner was convicted in this court of Capital murder in the death of Jill Ulmer and was sentenced to life without parole. He filed a timely notice of appeal.

In his appeal to the Arkansas Supreme Court, Petitioner raised 5 (five) grounds for relief;

1. The circuit court erred in denying his motion for directed verdict because there was insufficient evidence to support a conviction for capital murder;

2. The circuit court erred in giving the jury an unconstitutional instruction that shifted the state's burden of proof to the defendant;

3. The circuit court abused it's discretion in allowing testimony that the victim was pregnant;

1

4.  The circuit court abused it's discretion in admitting state's evidence 9-16, photographs of the crime scene.

5.  The circuit court erred in denying his motion to suppress custodial statements he made before Miranda warnings were given.

On November 3, 2011, The Arkansas Supreme Court denied all relief. *( See Anderson vs. State, 2011 Ark. 461 )*

On December 29, 2011, Petitioner filed a timely **Petition for Post conviction Relief Pursuant to Rule 37.1**. On July 5, 2012, this court held an evidentiary hearing on the claims, but ultimately denied relief.

On October 24, 2012, Petitioner filed a timely Notice of Appeal to the Arkansas Supreme Court. In that appeal, he raised 3 grounds for relief:

1.  It was error to represent him for the Rule 37 proceedings which he asserted was required pursuant to *Martinez vs. Ryan,* **133 S. ct. 1911;**

2.  The trial court was required to provide a ruling on all claims raised in the proceedings and that the order was therefore insufficient under the Supreme Court's Procedural rule's.

3.  Various instances of ineffective assistance of trial counsel.

On January 22, 2015, the Arkansas Supreme Court denied all relief. **(See** *Anderson vs. State,* **2015 Ark. 18) (per curiam )**

On February 6, 2015, Petitioner filed a **Motion for reconsideration** which was denied on April 30, 2015.

On December 3, 2015, Petitioner filed a **Petition For Writ Of Habeas Corpus** in the United States District Court for the Eastern District of Arkansas raising several grounds for relief. The magistrate recommended that all relief be denied. On November 16, 2016, Petitioner

2

filed Objections to the proposed findings and recommendations. Habeas relief was ultimately denied.

On September 16, 2016, Petitioner filed an identical petition in this court as he files here. In it, he requested that the knives that were allegedly used in the commission of the offense should be tested for fingerprints, through out all the post-conviction proceedings referenced above, Petitioner has asserted that the lack lack of his fingerprints on the weapons would be exculpatory in nature and would prove his actual innocence.

On September 26, 2016, the state filed a response to the petition. In it, they propounded several reasons for relief to be denied. **( Attachment A)**

On October 13, 2016, Petitioner filed a pleading entitled **Petitioner's Traverse To Respondent's Response,** that replied to several misstatements of fact and law that appeared in the State's response. (Attachment B )

On July 24, 2017, this Court entered an order denying relief, on the grounds that Petitioner had failed to state facts upon which relief could be granted. (Attachment C ) Notably, the State never sought relief upon 12 (b) (6) grounds.

From all of these efforts, this petition originates.

# II. Standard of Review

### A.C.A. 16-112-201 states as follows:

1. Except when direct appeal is available, a person convicted of a crime may commence a proceeding to secure relief by filing a petition in the court in which the conviction was entered to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as well disposition as may be appropriate, if the person claims under penalty of perjury that:

3

2.  The scientific predicate for the claim could not have been previously discovered through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would find the petitioner guilty of the underlining offense.

# III. Argument

The State alleged that petitioner stabbed Jill Ulmer to death because he was upset about her pending pregnancy, that (1) he never stabbed, much less killed, the victim: (2) testing conducted on the knife handle would clear him of any involvement in the victim's death and (3) the victim died as a result of law enforcement finding indiscriminately into the apartment. Further, the lack of blood on Petitioner's clothing militates against a guilty verdict .

Petitioner has long insisted throughout post-conviction proceedings that the knife handle should be tested for fingerprints. He original insisted that counsel conducted such testing. In the evidentiary hearing, the following occurs:

> Q. Also, I asked that the knives be sent to the crime lab to be tested for fingerprints?
>
> A. You did.
>
> Q. I requested that.
>
> Q. But you just stated that it was part of your strategy not to send them?
>
> A. That's correct.

**(Rule 37 Evidentiary hearing Tr. 37-38)**

The same occurred regarding testing the clothes he was wearing or producing the clothes he was wearing that night at trial. **(Tr. 38-39)**

4

**(Attachments D & E)**

Because the knife was never subjected to testing and the clothes Petitioner was wearing were never tested for blood or produced at trial, the court should order testing of these items by True Allele.

The items were retained by the State's Crime Lab and/or the Fayetteville police Department.

## (a) Grounds For Relief

### A.C.A. 16-112-202 states:

Except when direct appeal is available, a person convicted of a crime may make a motion for the performance of fingerprinting, forensic deoxyribonucleic acid (DNA) testing, or other tests which may become available through advances in technology to demonstrate the person's actual innocence if:

(2)

The specific evidence to be tested was not previously subjected to testing and the person making the the motion under this section did not :

A. Knowingly and voluntarily wave the right to request testing of the evidence in a court proceeding commenced on or after August 12,2005, or

B. Knowingly failed to request testing of the evidence in a prior motion for post-conviction testing:

### Further subdivision 4 states:

(4) The specific evidence to be tested is in the possession of the state and has been subjected to a chain of custody, and under conditions sufficient to ensure that the evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed testing.

5

**Subdivision 6 states:**

(6) The person making a motion under this section identifies a theory of defense that:

(B)

Would establish the actual innocence of the person in relation to the offense being challenged under 16-112-201;

**Petitioner also involves subdivision 9 of the statute which reads in pertinent part:**

The person making a motion under this section certifies that he or she will provide a deoxyribonucleic acid (DNA) or other sample or a fingerprint for comparison.

## (6) <u>Evidence to be tested</u>

The evidence to be tested is as follows;

1. All blood samples taken from the 👕 scene:

2. The clothing petitioner was wearing at the time of arrest:

3. The purported murder weapon for the presence of latent fingerprints:

4. All latent fingerprints testing that were lifted at the scene or taken from the body of Jill Ulmer.                                                                          •

5. Any blood, DNA, fingerprint testing that was tested under the conditions established in **Daubert vs Merrell Dow Pharmaceuticals** for evidence to be considered as reliable and scientific.

Petitioner moves the Court to order that the samples be tested using the True Allele system of verification, which is a computer based algorithm that has been developed since the time of Petitioner's trial. It has gained widespread acceptance among law enforcement and has been peer reviewed. **(See Trial by Machine , 104 Geo. L. J. 1245,2016)**

6

Such testing would prove Petitioner's actual innocence by showing that;

1. He never touched the purported murder weapon ,

2. That he was not bloody at all. In fact his clothes displayed an absence of any blood.

### (1) Machine Testimony and it's Reliability

Programs that use machine-learning techniques might require their own set of protocols to promote accuracy. Data scientists have developed very different "evaluations metrics"to test the performance of the machine learning models depending on the potential problem being addressed. For example, testers might use a technique called "hold-out validation" to determine whether a Training set" of data used at the beginning of supervised learning is inappropriate set on which to train the machine.

### (See Alice Zheng, Evaluating Machine Learning Models: A Beginner's Guide to Key Concepts and Pitfalls 3,2015)

Applying principles of discovered and access to reports and witnesses that is applied to human testimony to machine sources, a court might require the proponent of a machine "expert" a source that generates and conveys information that is helpful to a court but beyond the court's knowledge-to disclose the substances and basis of the machine's conclusion. The court mat require access to the machine'source code, if a review of the code were deemed necessary to prepare a rebuttal of the machine's claims.

A court might require meaningful access to the machine before a hearing, such as in this case, so the State can both review the machine's code, if it is disclosed , and also input different assumptions and parameters into the machine-for example, those consistent with their theory of the case-to see what the machine then reports. True Allele offers access to its program to criminal defendants, with certain restrictions, but only for a limited time and without the source code. **(See e.g. State's Response to Defense Motion To Compel at 19, State vs. Farr, No.10-1-09274-5 Wash. April 4. 2016: Http://www.cybgen.**

7

com/information/newsroom/2016/apr/files/States-Response-to-Defense-Motion-to-Compel-True Allele-Source-Code.pdf)

This sort of "black box tinkering" allows users to "confront" the code "with different scenarios", thus "reveal[ing] the blueprints of it's decision-making process." (Mayan Perel & Nna Ellen-Koren, **Black Box Tinkering: Beyond Transparency In Algorithmic Enforcement, 69 Fla. L. Rev. at 6, 2017)**

     To the extent some courts have interpreted Federal Rule 901(b)(9) as requiring proof that any result of a mechanical process be "accurate" as a condition of admission, they have done so largely within the realm of computer simulations offering "expert" opinions, importing a **Daubert** - like reliability analysis. Some courts, after **Daubert**, have interpreted Rule 901 (b)(9) as a requirement that the opinions of computer simulations be "reliable"thus applying the **Daubert**, requirements for human expert testimony to computer "experts" **(See e.g. State vs. Swinton, 847 A.2d 921, 942, Conn. 2004)** Arkansas requires substantially the same as above. **(See Rule 901 (b)(9) , A.R.E.) See also Settles vs.State , 2011 Ark.App. 241 March 30, 2011; Allen vs. State, 2018 Ark. App, 603, December 12,2018.**

     Rules requiring the scientific or technical methods of expert witnesses to be reliable and reliably applied should also extent to machine sources, at least those whose conveyances related to matters that are beyond the ken of the court. **Daubet and Frye** technically do not apply to machine conclusions admitted without an accompanying human witness, although they could be modified to do so. Under current law, courts treat the machine as the method of human expert, rather than as the expert itself, even when the expert is a "mere Schuene" for the machines output. **(See Bullcoming vs. New Mexico , 564 U.S. 647, 2011) (Sotomayor, J., Concurring) (quoting State vs. Bullcoming, 226 P.3d 1, 9 [N.M.2010] )**

A rule requiring that the machine itself follow a reliable, and reliably applied, method for reaching its conclusion would involve more scrutiny than a typical **Daubert-frye** hearing currently offers most judges rely heavily on validation studies in concluding that a machine, whether it be the Intoxilyzer 8000 or True Allele, uses a generally reliable process to reach its result. **Daubert** itself calls for this focus on validation **(See Daubert vs. Merrill Dow Pharmaceuticals, Inc, 509 U.S. 579, -1993- adopting the popperian view of scientific validity**

based on "falsifi-ability.") (quoting Karl popper, **Conjecures and refutations: The groth of scientific knowledge** 37, 5th ed. 1989) In the forensic identification context, a machine might be

assumed reliable because its conveyances have not been proven to have ever led to a wrongful conviction. **(See Robert Garcia, Garbage in, Gospel out: Criminal Discovery, computer Rleiability, and the construction, 38 UCLA L.Rev. 1043, 1991)** True Allele advertises that the company "always gives an answer" even in the "most challenging" mixtures. **(See e.g. Letter from Mark Perlin, chief science and executive officer, cybergenetics, to Jerry Varnell, constuct Specialist Federal Bureau of Investigation 3, April 1, 2015)**

In the DNA mixture, precisely those mixtures deemed too challenging to resolve manually because of degradation or other issues are relegated to software to solve.

Perhaps the most compelling reason to order Petitioner's clothes to be tested, the knife to be tested, the latent fingerprints and other items to be subjected to testing by True Allele is that in at least one case, a defendant used results to convince prosecutors to support vacating his conviction. **(See e.g. Man Released From Prison After DNA Clears him of 1989 Rape, CBS local chi, April 25, 2016, http:// chicago.cbslocal.com/2016/4/25/darryl-priluns-cleared-rape-dna-evidence [http://permace.cc/b37m-T5G9] [ reporting that True Allele was used to convince prosecutors to acquiesce in exoneration of convicted rapist]**

Petitioner is sitting in prison for crime that he did not commit, an undoubtedly brutal and gruesome crime. Testing of the knife handle would come to one of two conclusions: Either Petitioner committed the crime or he did not. Either way fingerprint testing would serve the ends of justice by,

1. Keeping a guilty man in prison, or,

2. Setting an innocent man free.

The same can be said of testing the Petitioner's clothes he was wearing at the same time of arrest. If in fact Petitioner stabbed Ms. Ulmer in the abdomen and cut her common iliac artery and vein, his clothes should have been saturated with blood. Dr. Adam Criag testified that this artey is a "high pressure blood vessel" that "squirts blood when cut." so, given this testimony

9

there should be blood on those clothes even if tested after the passage of time. The same of any latent prints or blood swatches.

In Arkansas, the admission of expert or machine testimony is governed by the Supreme Court's decision in **Daubert vs. Merrill Dow  Pharmaceuticals, Inc. 509 U.S. 579, -1993 by Arkansas Rules of Evidence 702 and 901 (b)(9) and Prater vs. State, 307 Ark. 180, as well as Farm Bureau Mut. Ins. Co. of Arkansas, Inc. vs. Foote, 341 Ark. 105,** a case in which Arkansas expressly adopted the **Daubert** standard for expert and scientific evidence.

The Supreme Court held in **Daubert** that judges are to serve as gatekeepers in deciding whether to admit expert testimony purportedly regarding scientific knowledge.**(Daubert , 509 U.S. at 592)**. In deciding a judge must consider whether the proposed testimony would assist the jury in understanding or determining a fact in issue. (Id.) Such an inquiry, "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony ,,,,, Properly can be applied to the facts in issue' (Id. at 592 -93) and whether that reasoning or methodology "rests on a reliable foundation." (Id. at 597)

Any testing ordered by the Court , whether through True Allele or otherwise, should be required to the forgoing standards.

Based on information and belief, Petitioner asserts that True Allele meets these criteria, and he asks the court to order testing through them.

10

# IV. Appointment of Counsel

Pursuant to **A.C.A. 16-112-207 (a) (1),** Petitioner requests that counsel be appointed to represent him in this matter.

# Conclusion

Wherefore, premises considered, and based on the foregoing, Petitioner prays that the court grant his motion for scientific testing of the items previously described, and appoints counsel to represent him in this matter.

Respectfully Submitted ,

Ricky Anderson #148467
Maximum Security Unit
2501 State Farm Road
Tucker Ar. 72168

# Certificate of Service

**I certify that I have severed a copy of the forgoing to Matt Durrett, Prosecuting Attorney, by placing same in the Maximum Security Unit Institutional mail system with sufficient postage this** _18 Th_ **day of** _January_ **, 2019.**

**Ricky Anderson # 148467**
#148467

11

# Verification

I certify that the foregoing is true and correct to the best my knowledge, except to matters based upon information and belief, and to those , I believe them to be true, I affirm that the forgoing is true under the penalty of perjury.

Executed at : Tucker Arkansas

Date : _____

Signed : _____

State of Arkansas )

County of Jefferson )

Subscribed and sworn to before me, a Notary Public , this :

_22nd_ day of _August_ , 2019

/s/ _____

Notary Public

My Commission Expires: _3-9-2021_

JOHN SPEARS
NOTARY PUBLIC-STATE OF ARKANSAS
JEFFERSON COUNTY
My Commission Expires 03-09-2021
Commission # 12382198

12